■ RUTH EDWARDS, Appellant, v MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY et al., Respondents. [676 NYS2d 87] —Judgment, Supreme Court, New York County (Phillip Rumsey, J., and a jury), entered November 22, 1996, which, following a trial on the issue of liability, found in favor of defendants, unanimously reversed, on the law and the facts, without costs, and the matter remanded for a new trial.

Plaintiff and a friend, Betty Watson, were traveling eastbound on the 14th Street crosstown bus, when the bus collided with a cab travelling in the same direction. Because of construction along East 14th Street, there were no sidewalks, all westbound traffic had been detoured and the lane for eastbound traffic was marked by cones and barricades; according to Watson, who was seated in the front of the bus on the lefthand side facing forward, there was only enough room for a bus or two small cars to travel, and the road was bumpy and uneven.

Cones and barricades also marked the bus stop at Third Avenue, and they were placed in such a way that the bus had to pull over at an angle, with its front end closest to the curb; the rear of the bus protruded into traffic. After picking up and discharging passengers, Watson testified, the bus straightened out and "zoomed" out of the bus stop, pulling away too fast "to be making that kind of maneuver." She saw that a cab was approaching that was also driving "faster than he should have been." She could not estimate the speed at which either vehicle was travelling, but it seemed as if the two vehicles were trying to "beat each other," and she braced herself for the impact that then occurred.

Plaintiff did not see how the accident happened, because she was seated in the row of seats directly behind the driver facing south, with her back to the traffic. She testified that the collision occurred as the bus was pulling away from the curb, and that, upon impact, she was thrown from her seat and injured.

The bus driver did not testify at trial, and a portion of his deposition was read into the record as part of plaintiff's case-in-chief, to the effect that after the collision, he saw the cab driver examine his cab for damage and drive off. However, the bus driver was able to note the cab's license plate. The cab driver, a principal of the cab company that owned the vehicle,

defendant Bambi Cab Corporation, failed to appear for deposition or trial.

Defendant bus company called one witness, Louis Texidor, a passenger on the bus. According to Texidor, he had started to get up from his seat just before the accident; he was not sure whether the bus was stopped for a red light or was in the bus stop. He, too, described the bus as being at an angle in the bus stop, with the front closest to the curb. Suddenly, he heard a bang on the side of the bus; at first he thought there had been a shooting, but he then realized that a cab had collided with the bus.

During its deliberations, the jury sent a note to the court asking "is negligence always involved in any accident between two vehicles?" After conferring with counsel, the court answered the note in the following fashion, without objection: "The way your question was worded, the Court would respond by indicating the answer no. I would point out to you the wording and the question set forth in the verdict sheet are designed such that you are free to find negligence as to one or both defendants, and you are free to find no negligence as to one or both defendants as your verdict might indicate. Hope that is helpful. And with that, you may go back to the jury room."

The jury thereafter returned a verdict finding neither driver negligent. Plaintiff moved to set aside the verdict as against the weight of the evidence and for a new trial on the issue of liability. According to plaintiff, the proof submitted at trial, under either plaintiff's or defendants' version, required a finding of negligence on the part of at least one defendant, particularly in view of the absence of any evidence or suggestion that the accident had been "unavoidable" or caused by some intervening factor.

The trial court denied the motion, concluding that "the quantity of evidence sufficient to require a new trial" was lacking and that the evidence was essentially limited to Watson's testimony that the vehicles were going "fast" on a road under construction. Thus, the court concluded "it cannot be said that the jury verdict is inconsistent with any interpretation of the evidence," which was "such that the jury could conclude that the plaintiff failed to meet the burden of proof."

We agree with plaintiff that the verdict was against the weight of the evidence and reverse and remand for a new trial on the issue of liability. A jury verdict should not be set aside as against the weight of the evidence unless the evidence so preponderates in favor of the moving party that the jury could not have reached its verdict upon any fair interpretation of the

evidence (*Grassi v Ulrich*, 87 NY2d 954, 956; *Lolik v Big V Supermarkets*, 86 NY2d 744, 746; *Mazariegos v New York City Tr. Auth.*, 230 AD2d 608). In the instant case, there was no fair interpretation of the evidence under which the jury could reasonably have concluded that neither driver had been negligent in the operation of his vehicle.

According to plaintiff's case, both vehicles were traveling faster than they should have been given the condition of the road, and it seemed that the two drivers were trying to "beat" each other into the only lane of traffic on the street. Pursuant to the relevant sections of the Vehicle and Traffic Law, the court instructed the jury that each driver had a duty to operate his vehicle with a reasonable degree of care and at a reasonably safe rate of speed, taking into consideration conditions of the road and traffic, as well as to keep a proper lookout to avoid an accident. The jury was further instructed that the bus driver was required to give way to the cab overtaking it on its left, while the cab driver was required to see and avoid striking the bus that was pulling out of the bus stop and to pass it at a safe distance and speed. Applying these instructions to the plaintiff's evidence, the jury was entitled to find that both drivers had been negligent in causing the accident.

However, even under the evidence presented by the sole witness for the defense, to the effect that the bus was hit while standing still, there was negligence at least on the part of the cab driver, who struck a stationary vehicle. As plaintiff correctly points out, there was absolutely no evidence that some intervening factor caused the accident or that the accident was unavoidable, in that it "could not have been foreseen or prevented by the exercise of reasonable caution" (*Mikula v Duliba*, 94 AD2d 503, 507). Moreover, neither driver appeared at the trial, leaving the jury without any explanation whatsoever of how or why the accident actually happened. Their failure to appear and account for the collision, however, cannot inure to plaintiff's detriment, as the defense seems to suggest by arguing that plaintiff failed to establish the cause of the accident (*see, Kazales v Minto Leasing*, 61 AD2d 1039). Indeed, while the defense argues that "particular deference" must be accorded to jury verdicts in favor of defendants in tort cases because the "clash of factual contentions" and "sharply conflicting evidence" may lead a jury to conclude not that defendant has prevailed but that plaintiff has failed to meet his or her burden of proof (*Nicastro v Park*, 113 AD2d 129, 134), the trial in the instant matter hardly involved "a classic case of conflicting accounts" (*Brown v Taylor*, 221 AD2d 208). To the con-

trary, under either side's version, there is simply no fair interpretation of the evidence under which a jury could have found neither driver negligent (see, Montero v Henriquez, 133 AD2d 677).

Plaintiff also argues that the court's response to the jury note effectively constituted an "unavoidable accident" instruction. While such a charge would have been unwarranted, the issue is unpreserved and, although a better response could have been fashioned, the court ultimately referred the jury to the verdict sheet, which was entirely appropriate.

Finally, plaintiff contends that the court erred in two respects in connection with the cab driver's absence at trial, first by permitting testimony that the defendant cab driver could not be located, and, second, by diluting the missing-witness charge with respect to him in connection with that testimony. The trial court determined that while it would give the "Failure to Produce Witness" charge as to the cab driver, he would also allow the cab company's investigator to testify that he had not been able to locate the driver. Plaintiff's trial counsel objected to the investigator's testimony only on the ground that it did not establish the cab driver's actual unavailability.

While this claim has not been properly preserved for review, we reach it in light of our reversal on other grounds, in order that the retrial may be properly conducted, and find that it was error to admit this testimony. "It is well settled that where one party to an action, knowing the truth of a matter in controversy and having the evidence in his possession, omits to speak, every inference against him warranted by the evidence may be considered" (Farrell v Labarbera, 181 AD2d 715, 716). Clearly, the investigator's testimony, compounded by the court's charge, undermined the negative inference that the jury was entitled to draw against the cab company and the cab driver in this regard. In view of the verdict finding neither driver negligent, it cannot be said that this error was harmless. Concur—Sullivan, J. P., Milonas, Ellerin, Nardelli and Mazzarelli, JJ.